M. Anderson Berry (SBN 262879)
*aberry@justice4you.com*
Gregory Haroutunian (SBN 330263)
*gharoutunian@justice4you.com*
Brandon P. Jack (SBN 325584)
*bjack@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Tel: (747) 777-7748
Fax: (916) 924-1829

Norman E. Siegel (*pro hac vice* forthcoming)
Brandi S. Spates (*pro hac vice* forthcoming)
Kate C. Marshall (SBN 350231)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
*siegel@stuevesiegel.com*
*marshall@stuevesiegel.com*
*spates@stuevesiegel.com*

*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE KRONER THOMAS, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| KEENAN & ASSOCIATES, | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiff Jasmine Kroner Thomas ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Keenan & Associates ("Keenan" or "Defendant"), individually and on behalf of all others similarly situated, and alleges as follows, based upon personal knowledge as to herself and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all other individuals ("Class Members"), totaling more than 1.5 million[1] people who had their personally identifiable information and protected health information (collectively, "Private Information")[2] accessed and obtained by an unauthorized party (the "Data Breach").

2. Keenan is a California based insurance consulting and brokerage firm that "provides innovative insurance and budgetary solutions for schools, public agencies and health care organizations"[3] ("clients") throughout the country.

3. Keenan contracts with its clients to provide insurance and benefits programs. In the regular course of its work on behalf of its clients, Keenan collects and stores Plaintiff's and Class Members' Personal Information on centralized servers maintained by Keenan.

4. Between August 21, 2023 and August 27, 2023, Keenan suffered a massive data breach that exposed individuals' full names, dates of birth, Social

---

[1] https://www.securityweek.com/1-5-million-affected-by-data-breach-at-insurance-broker-keenan-associates/ (last visited February 27, 2024).

[2] As used herein, "Personal Information" consists of both protected health information ("PHI") and personally identifiable information ("PII") and is defined as name, date of birth, Social Security number, passport number, driver's license number, health insurance information and general health information.

[3] https://www.keenan.com/About (last visited February 27, 2024).

CLASS ACTION COMPLAINT

Security numbers, passport numbers, driver's license numbers, health insurance information and general health information.

5.    Although Keenan admitted that it became aware of the Data Breach on August 27, 2023, Keenan inexplicably waited five months before notifying Class Members that their highly sensitive Personal Information was compromised.

6.    Keenan is responsible for the Data Breach by failing to implement and maintain reasonable safeguards to protect Plaintiff's and Class Members' information and by failing to comply with industry-standard data security practices.

7.    As a result of Keenan's failure to protect the sensitive information it was entrusted to safeguard, Plaintiff and Class Members have suffered or are at an imminent risk of identity theft and fraud and will face a lifetime of expensive and time-intensive efforts to mitigate the actual and potential impact of the Data Breach, including placing freezes and alerts with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their financial and medical accounts and credit reports for unauthorized activity. They now face a significant risk of identity theft and fraud now and into the indefinite future.

**PARTIES**

8.    Plaintiff Jasmine Kroner Thomas is a resident and citizen of California, whose Personal Information was compromised in the Data Breach.

9.    Keenan & Associates is a California corporation, with its principal place of business at 2355 Crenshaw Boulevard, Suite 200, Torrance, CA 90501.

**JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction over this action under Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative Class

Members, and at least some members of the proposed Class have a different state of citizenship than Defendant's state of citizenship.

11.    This Court also has supplemental jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1367(a) because these claims form part of the same case or controversy.

12.    This Court has general personal jurisdiction over Keenan because it maintains and operates its principal place of business in California and is thus essentially at home in California. This Court has specific personal jurisdiction over Keenan because Keenan conducts substantial business in California related to Plaintiff and the Class Members and has thereby established minimum contacts with California sufficient to authorize this Court's exercise of personal jurisdiction over Keenan.

13.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Keenan resides in this District and Keenan's contacts within this District would be sufficient to subject it to personal jurisdiction there if this District were a separate state. Further, this District is where a substantial part of the events and omissions giving rise to this action occurred, including unauthorized third parties' access of Keenan's internal servers and obtained Personal Information of Plaintiff and Class Members, and it is where a substantial part of the property that is the subject of the action is situated.

**FACTUAL ALLEGATIONS**

***Keenan's Privacy Practices***

14.    Keenan advertises that it provides insurance and budgetary solutions for schools, public agencies and healthcare organizations, and touts that "[w]e are the experts you can rely on when it comes to risk management, claims services, and technology."[4]

---

[4] https://www.keenan.com/About (last visited February 27, 2024).

15.    In the course of providing these services, Keenan collects and maintains highly sensitive Personal Information received from its clients, Plaintiff, and Class Members, including but not limited to names, dates of birth, Social Security numbers, passport numbers, driver's license numbers, health insurance information, and general health information.[5]

16.    By obtaining, collecting, and storing the Personal Information of Plaintiff and Class Members, Keenan assumed legal and equitable duties and knew or should have known it was responsible for protecting the Personal Information from unauthorized disclosure.

17.    Keenan understands the importance of protecting the Personal Information entrusted to it by Plaintiff and Class Members and maintains a "Privacy Policy" confirming such. According to Keenan's Privacy Policy, it has "implemented measures reasonably designed to protect and secure your Personal Information from accidental loss, misuse, and from unauthorized access, use, alteration, and disclosure."[6]

18.    Keenan also maintains a "California Privacy Policy", which provides "information for California residents, as required by the California Consumer Privacy Act ("CCPA"), about how we collect, use, receive, and disclose their Personal Information."[7]

19.    In both privacy policies, Keenan delineates the various circumstances under which it may disclose consumers' Personal Information for legitimate legal and business purposes. It does not, however, include disclosing consumers' Personal Information to unauthorized third parties.

---

[5] https://www.keenan.com/Privacy-Statement (last visited February 27, 2024).

[6] Id.

[7] https://www.keenan.com/ccpa (last visited February 27, 2024).

CLASS ACTION COMPLAINT

20.    Despite recognizing its duty to do so, Keenan failed to implement reasonable safeguards to protect Plaintiff's and Class Members' Personal Information.

### *The Data Breach*

21.    Keenan posted a "Notice of Security Incident" to its website concerning the Data Breach, which states as follows:

> On Sunday, August 27, 2023, Keenan discovered certain disruptions occurring on some of our network servers. We immediately began an investigation and engaged leading third-party cybersecurity and forensic experts to assist. Within hours of identifying the cybersecurity incident, we had contained it. We also notified the FBI.
>
> The investigation revealed that the incident may have affected some of your personal information.
>
> Data may have included name, date of birth, Social Security number, driver's license number, passport number, general health information, and health insurance information.[8]

22.    On January 26, 2024, Keenan notified Maine's Attorney General of the Data Breach. In its notice ("Breach Notice"), Keenan acknowledged that the "investigation determined that an unauthorized party gained access to certain Keenan internal systems at various times between approximately August 21, 2023 and August 27, 2023, and that the unauthorized party obtained some data from

///

///

---

[8] https://www.keenan.com/Notice-of-Security-Incident (last visited February 27, 2024).

CLASS ACTION COMPLAINT

Keenan systems. A thorough review of that data was conducted to identify what information was involved and identify individuals to whom the data related."[9]

23.    Thus, the Data Breach resulted from Keenan's failure to adequately protect and safeguard the highly sensitive Personal Information entrusted to it, and from its failure to comply with industry-standard data security practices.

24.    The Breach Notice further provided that "[t]o help prevent a similar type of incident from occurring in the future, we implemented additional security protocols designed to enhance the security of our network, internal systems and applications. Keenan will also continue to evaluate additional steps that may be taken to further increase our defenses. In addition, we are continuing to support federal law enforcement's investigation."[10]

25.    Keenan also advised affected individuals to take a number of actions to protect themselves against the threat of harm:

> While we are not aware of any evidence that your personal information has been misused, we wanted to make you aware of the incident and provide you with additional information on steps you may consider taking. As a precaution, **Keenan is offering you a complimentary 24-month membership in Experian® IdentityWorksSM Credit 1B**. This product helps detect possible misuse of your personal information and provides you with identity protection services focused on immediate identification and resolution of identity theft. IdentityWorks is completely free to you and enrolling in this program will not hurt your credit score.[11]

---

[9] "*Copy of notice to affected Maine residents*" located at: https://apps.web. maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0. shtml (last visited February 27, 2024).

[10] *Id.*
[11] *Id.*

26.     Conspicuously absent from the Notice of Security Incident and Breach Notice are any details regarding how the Data Breach happened or how Keenan's actions have remedied the root cause.

27.     Keenan also failed to explain why it waited nearly five months after Keenan detected the breach before notifying Plaintiff and Class Members who were affected by the Data Breach.

28.     By waiting to disclose the Data Breach, Keenan prevented victims from taking meaningful, proactive, and targeted mitigation measures to protect themselves from harm.

***Foreseeability of the Data Breach***

29.     As noted above, following the Data Breach, Keenan stated that it has "implemented additional security protocols designed to enhance the security of our network, internal systems and applications." Keenan further stated that it will continue to evaluate additional steps that may be taken to further increase our defenses."[12]

30.     But these measures were too little too late. Had Keenan implemented industry-standard safeguards to monitor, assess, and update security controls safeguards to monitor, assess, and update security controls and related system risks, it would have been able to identify and eliminate successful intrusion long before the Data Breach occurred. Keenan's implementation of enhanced security measures only after the fact is inexcusable given its knowledge that the insurance industry is one of the most targeted sectors of cyberattacks.

31.     Keenan was at all times fully aware of its obligation to protect the Personal Information entrusted to it and the risks associated with failing to do so. Keenan observed frequent public announcements of data breaches affecting the

---

[12] *Id.*

insurance industry and knew that information of the type collected, maintained, and stored by Keenan is highly coveted and a frequent target of hackers.

32.    Indeed, insurance institutions are prime targets for cyberattacks because of their size and scope, along with the substantial amount of sensitive data they manage and store. There have been several major insurance related data breaches in the United States within the past year.

33.    For example, in December 2023, First American Financial, the second largest title insurer in the US, "was forced to shut down systems of several of its subsidiaries, including its First American Trust banking unit, after it detected a data breach. The company said hackers accessed, stole, and encrypted non-production systems data."[13]

34.    Also in December 2023, Pan-American Life Insurance Group (PALIG) "confirmed that its data was compromised through the MOVEit cyberattack, adding the life and health insurer to the hack's growing list of victims. The attack, which happened in May, has impacted more than 2,500 businesses worldwide."[14]

35.    In June 2023, Delta Dental of California, the largest insurer in the US, discovered a data breach whereby "almost seven million patients of Delta Dental California had their personal information compromised."[15]

36.    In May 2023, MCNA Insurance Company disclosed that "personal health information of nearly nine million patients was compromised in a cyber incident discovered in March. In a data breach notification letter filed with the

---

[13] https://www.insurancebusinessmag.com/us/guides/the-insurance-industry-cyber-crime-report-recent-attacks-on-insurance-businesses-448429.aspx (last visited February 27, 2024).

[14] *Id.*

[15] *Id.*

Maine state attorney general's office dated May 26, the firm said that it detected unauthorized access to its systems on March 6, with some found to be infected with malicious code. . . .According to MCNA, the hackers were successful in accessing patient personal information." [16]

37.    In mid-April 2023, "the second-largest health insurer [Point32Health] in Massachusetts suffered major technical outages resulting from a ransomware attack. The incident brought down the company's systems that it uses to service members and providers, resulting in some members having difficulty contacting their insurers."[17]

38.    At all relevant times, Keenan knew, or reasonably should have known, of the importance of safeguarding Personal Information and the foreseeable consequences that would occur if it failed to do so, including, specifically, the significant costs that would be imposed on affected individuals as a result of the breach.

39.    Despite the publicly available knowledge of the serious threat of compromises of Personal Information, and despite collecting, storing, and maintaining the Personal Information of millions of individuals, Keenan failed to use reasonable care in maintaining and overseeing the privacy and security of Plaintiff and Class Members' Personal Information.

***Allegations Relating to Plaintiff Kroner Thomas***

40.    Plaintiff Jasmine Kroner Thomas lives and resides in San Jose, California and is an employee of one of Keenan's clients.

---

[16] https://www.insurancebusinessmag.com/us/guides/the-insurance-industry-cyber-crime-report-recent-attacks-on-insurance-businesses-448429.aspx (last visited February 27, 2024).

[17] Id.

41.    Plaintiff is an employee of Fremont Union High School District ("FUHSD"). Upon information and belief, FUHSD contracts with Keenan to provide certain insurance and benefits to its employees.

42.    To obtain services from Keenan, Plaintiff provided FUHSD and Keenan with highly sensitive Personal Information, including but not limited to demographic and health information.

43.    Following the Data Breach, Plaintiff received a "Notice of Data Security Incident from Keenan, dated January 26, 2024, informing her that it "experienced a cybersecurity incident that involved some of your personal information." Keenan explained that it was "in possession of that information due to its work on behalf of one of its customers."

44.    Specifically, the Notice of Data Security Incident stated that "[t]he review determined that the data involved contained some of your personal information, including your name and one or more of the following: date of birth, Social Security number, passport number, driver's license number, health insurance information, and general health information."

45.    Keenan offered Plaintiff complementary 24-month membership in Experian® IdentityWorksSM Credit 1B to help detect possible misuse of her personal information.

46.    As a result of the Data Breach, Plaintiff has spent time and effort researching the Data Breach and reviewing her financial and medical accounts for evidence of unauthorized activity, which she will continue to do so indefinitely. Plaintiff also suffers emotional distress knowing that her highly sensitive information is no longer confidential and can be used for blackmail, extortion, medical-related identity theft or fraud, identity theft or fraud, and any number of additional harms against her for the rest of her life.

CLASS ACTION COMPLAINT

47.    Keenan continues to store Plaintiff's Personal Information on its internal systems. Thus, Plaintiff has a continuing interest in ensuring that her Personal Information is protected and safeguarded from further breaches.

### *Keenan Failed to Comply with Federal Law and Regulatory Guidance*

48.    Federal agencies have issued recommendations and guidelines to help minimize the risks of a data breach for businesses holding sensitive data. For example, the Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices, which should be factored into all business-related decision making.[18]

49.    The FTC's publication *Protecting Personal Information: A Guide for Business* sets forth fundamental data security principles and practices for businesses to implement and follow as a means to protect sensitive data.[19] Among other things, the guidelines note that businesses should (a) protect the personal customer information that they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their networks' vulnerabilities; and (e) implement policies to correct security problems. The FTC guidelines further recommend that businesses use an intrusion detection system, monitor all incoming traffic for unusual activity, monitor for large amounts of data being transmitted from their system, and have a response plan ready in the event of a breach.[20]

50.    Additionally, the FTC recommends that organizations limit access to sensitive data, require complex passwords to be used on networks, use industry-

---

[18]    https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwith security.pdf (last visited February 27, 2024).

[19] https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited February 27, 2024).

[20] *Id.*

CLASS ACTION COMPLAINT

-12-

tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[21]

51.    The FTC has brought enforcement actions against businesses for failing to reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[22]

52.    Keenan was fully aware of its obligation to implement and use reasonable measures to protect the Personal Information of its customers and insurance agents but failed to comply with these basic recommendations and guidelines that would have prevented this breach from occurring. Keenan's failure to employ reasonable measures to protect against unauthorized access to patient information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

### *The Impact of the Data Breach on Victims*

53.    The Personal Information exposed in the Data Breach is highly coveted and valuable on the underground markets as the data can be used to commit identity theft and fraud, including medical-related identify theft and fraud, one of the most dangerous and costly forms of identity theft.

---

[21]    https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwith security.pdf (last visited February 27, 2024).

[22] https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/ privacy-security-enforcement (last visited February 27, 2024).

CLASS ACTION COMPLAINT

54.    Personal Information is valuable property rights. American companies are estimated to have spent over $19 billion on acquiring the personal data of consumer in 2018.[23] Due to its value, personal information can be sold at a range of price, for example bank details have a price range of $50 to $200, while a combination of a victim's passport and driver's license number could net close to a $1,000 for the seller.[24]

55.    According to Tom Kellermann, chief cybersecurity officer of cybersecurity firm Carbon Black, "Health information is a treasure trove for criminals [because] by compromising it, by stealing it, by having it sold, you have seven to 10 personal identifying characteristics of an individual."[25] For this reason, a patient's full medical records can sell for up to $1,000 on the dark web, while credit card numbers and Social Security numbers may cost $5 or less.[26]

56.    Identity thieves can use the Personal Information to: (a) commit insurance fraud; (b) obtain a fraudulent driver's license or ID card in the victim's name; (c) obtain a fraudulent passport; (d) obtain fraudulent government benefits; (e) file a fraudulent tax return using the victim's information; (f) commit medical and healthcare-related fraud; (g) access financial and investment accounts and records; (h) engage in mortgage fraud; or (i) commit any number of other frauds, such as obtaining a job, procuring housing, or giving false information to police during an arrest.

---

[23] https://www.iab.com/news/2018-state-of-data-report/ (last visited February 27, 2024).

[24] https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited February 27, 2024).

[25] https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (last visited February 27, 2024).

[26] https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited February 27, 2024).

CLASS ACTION COMPLAINT

57.    Further, malicious actors often wait months or years to use the Personal Information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Personal Information, meaning individuals can be the victims of several cybercrimes stemming from a single data breach.

58.    Given the confirmed exfiltration of Plaintiff's and Class Members' Personal Information from Keenan's systems, many victims of the Data Breach have already experienced significant harm as the result of the Data Breach, including spending time, money, and effort mitigating the potential for identity theft, fraud and other damages by purchasing credit monitoring services, reviewing financial and insurance statements, checking credit reports, and spending time and effort searching for unauthorized activity.

59.    Per a 2020, "Identity theft victimization affects tens of millions of Americans each year. Financial exploitation, in general, is associated with major health-related consequences such as increased rates of hospitalization and all-cause mortality."[27]

60.    It is no wonder then that identity theft exacts a severe emotional toll on its victims. The 2021 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft:

- 84% reported anxiety;
- 76% felt violated;
- 32% experienced financial related identity problems;
- 83% reported being turned down for credit or loans;

---

[27] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7013169/ (last visited February 27, 2024).

CLASS ACTION COMPLAINT

- 32% reported problems with family members as a result of the breach;
- 8% experienced medical-related identity problems; and
- 10% reported feeling suicidal.[28]

61.    Identity theft can also exact a physical toll on its victims. The Identity Theft Resource Center's *Identity Theft: the Aftermath 2017* reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;
- 37.1% reported an inability to concentrate/lack of focus;
- 28.7% reported they were unable to go to work because of physical symptoms;
- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and
- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[29]

62.    The unauthorized disclosure of the sensitive Personal Information to data thieves also reduces its inherent value to its owner, which has been recognized by courts as an independent form of harm.[30]

---

[28] https://www.idtheftcenter.org/wp-content/uploads/2021/09/ITRC_2021_ Consumer_ Aftermath_Report.pdf (last visited February 27, 2024).

[29]    https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath _2017.pdf (last visited February 27, 2024).

[30] *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

CLASS ACTION COMPLAINT

63.    Consumers are injured every time their data is stolen and traded on underground markets, even if they have been victims of previous data breaches. Indeed, the dark web is comprised of multiple discrete repositories of stolen information that can be aggregated together or accessed by different criminal actors who intend to use it for different fraudulent purposes. Each data breach increases the likelihood that a victim's personal information will be exposed to more individuals who are seeking to misuse it at the victim's expense.

64.    As the result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

      a.    The unauthorized disclosure of confidential information to a third-party;

      b.    Losing the inherent value of their Personal Information;

      c.    Losing the value of the explicit and implicit promises of data security;

      d.    Identity theft and fraud resulting from the theft of their Personal Information;

      e.    Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

      f.    Anxiety, emotional distress, and loss of privacy;

      g.    Costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

      h.    Unauthorized charges and loss of use of and access to their financial and investment account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including

CLASS ACTION COMPLAINT

missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

i. Lowered credit scores resulting from credit inquiries following fraudulent activities;

j. Costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including searching for fraudulent activity, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

k. The continued, imminent, and certainly impending injury flowing from potential fraud and identify theft posed by their Personal Information being in the possession of one or many unauthorized third parties.

65. Even instances where an individual is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again as there is typically significant time and effort associated with seeking reimbursement. The Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" relating to identity theft or fraud.[31]

66. There may also be a significant time lag between when personal information is stolen and when it is misused for fraudulent purposes. According to the Government Accountability Office, which conducted a study regarding data

---

[31] E. Harrell, U.S. Department of Justice, *Victims of Identity Theft, 2014* (revised Nov. 14, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited February 27, 2024).

CLASS ACTION COMPLAINT

breaches: "law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[32]

67.    Plaintiff and Class Members place significant value in data security. According to a survey conducted by cyber-security company FireEye Mandiant, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less personal information to organizations that suffered a data breach.[33]

68.    Plaintiff and Class Members have a direct interest in Keenan's promises and duties to protect their Personal Information, *i.e.*, that Keenan *not increase* their risk of identity theft and fraud. Because Keenan failed to live up to its promises and duties in this respect, Plaintiff and Class Members seek the present value of identity protection services to compensate them for the present harm and present and continuing increased risk of harm caused by Keenan's wrongful conduct. Through this remedy, Plaintiff and Class Members seek to restore themselves and Class Members as close to the same position as they would have occupied but for Keenan's wrongful conduct, namely its failure to adequately protect Plaintiff's and Class Members' Personal Information.

69.    Plaintiff and Class Members further seek to recover the value of the unauthorized access to their Personal Information permitted through Keenan's

---

[32] http://www.gao.gov/new.items/d07737.pdf (last visited February 27, 2024).

[33] https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_ bottomli.html (last visited February 27, 2024).

wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property. Like a technology covered by a trade secret or patent, use or access to a person's Personal Information is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret protected technology. Nevertheless, a plaintiff may generally recover the reasonable use value of the IP—*i.e.*, a "reasonable royalty" from an infringer. This is true even though the infringer's use did not interfere with the owner's own use (as in the case of a non-practicing patentee) and even though the owner would not have otherwise licensed such IP to the infringer. A similar royalty or license measure of damages is appropriate here under common law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a) Plaintiff and Class Members have a protectible property interest in their Personal Information; (b) the minimum damages measure for the unauthorized use of personal property is its rental value; and (c) rental value is established with reference to market value, *i.e.*, evidence regarding the value of similar transactions.

70.    Keenan's deficient Data Breach notices also caused Plaintiff and Class Members harm. The Data Breach notices failed to explain the precise nature of the attack, the identity of the hackers, or the specific data accessed and stolen for each Data Breach victim. Keenan's decision to withhold these key facts is significant because affected individuals may take different precautions depending on the severity and imminence of the perceived risk. By waiting five whole months to disclose the breach, Keenan prevented victims from taking meaningful, proactive, and targeted mitigation measures that could help protect them from harm.

71.    For the reasons as enumerated above, Keenan's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm.

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

72.    Plaintiff seeks relief in her individual capacity and as a representative of all others who are similarly situated. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), Plaintiff seeks certification of a nationwide class defined as: All persons whose Personal Information was compromised as a result of the Data Breach announced by Keenan on or about January 26, 2024 (the "Class").

73.    Excluded from the Class are Defendant, any entity in which Keenan has a controlling interest, and Keenan's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded are all persons who make a timely election to be excluded from the Class and any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

74.    <u>Class Identity:</u> The members of the Class are readily identifiable and ascertainable. Keenan and/or its affiliates, among others, possess the information to identify and contact Class Members.

75.    <u>Numerosity:</u> The members of the Class are so numerous that joinder of all of them is impracticable. Keenan's disclosure to Maine's Attorney General reveals that the class contains more than 1.5 million individuals whose Personal Information was compromised in the Data Breach.

76.    <u>Typicality:</u> Plaintiff's claims are typical of the claims of the members of the Class because all Class Members had their Private Information compromised in the Data Breach and were harmed as a result.

77.    <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no known interest antagonistic to those of the Class and her interests are aligned with Class Members' interests. Plaintiff was subject to the same Data Breach as Class Members, suffered similar harms, and faces similar

CLASS ACTION COMPLAINT

threats due to the Data Breach. Plaintiff has also retained competent counsel with significant experience litigating complex class actions, including Data Breach cases involving multiple classes and data breach claims.

78.    <u>Commonality and Predominance</u>: There are questions of law and fact common to the Class such that there is a well-defined community of interest in this litigation. These common questions predominate over any questions affecting only individual Class Members. The common questions of law and fact include, without limitation:

a.  Whether Keenan owed Plaintiff and Class Members a duty to implement and maintain reasonable security procedures and practices to protect their Personal Information;

b.  Whether Keenan received a benefit without proper restitution making it unjust for Keenan to retain the benefit without commensurate compensation;

c.  Whether Keenan acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' Personal Information;

d.  Whether Keenan violated its duty to implement reasonable security systems to protect Plaintiff's and Class Members' Personal Information;

e.  Whether Keenan's breach of its duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiff and Class Members;

f.  Whether Keenen breached its third-party beneficiary contract with Plaintiff and Class Members;

g.  Whether Keenan adequately addressed and fixed the vulnerabilities that enabled the Data Breach;

h.  Whether Keenan violated the California Unfair Competition Law;

i.  Whether Plaintiff and Class Members are entitled to injunctive relief;

j.  Whether Keenan provided timely notice of the Data Breach to Plaintiff and Class Members; and

k.  Whether Class Members are entitled to compensatory damages, punitive damages, and/or statutory or civil penalties as a result of the Data Breach.

79.  Keenan has engaged in a common course of conduct and Plaintiff and Class Members have been similarly impacted by Keenan's failure to maintain reasonable security procedures and practices to protect their Personal Information, as well as Keenan's failure to timely alert Plaintiff and Class Members of the Data Breach.

80.  <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if not all Class Members would find the cost of litigating their individual claims prohibitively high and have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and risk inconsistent treatment of claims arising from the same set of facts and occurrences. Plaintiff knows of no difficulty likely to be encountered in the maintenance of this action as a class action under the applicable rules.

**CLAIMS FOR RELIEF**

**COUNT I**
**Negligence**
***(On Behalf of Plaintiff and the Class)***

81.   Plaintiff restates and realleges every allegation set forth in the preceding paragraphs.

82.   Keenan required Plaintiff and Class Members to submit (through its clients) non-public personal information as part of its business services.

83.   Keenan owed Plaintiff and Class Members a duty to exercise reasonable care in protecting their Personal Information from unauthorized disclosure or access. Keenan acknowledged this duty in its privacy policies where it promised not to disclose Personal Information without legitimate legal or business purpose.

84.   Keenan owed a duty of care to Plaintiff and Class Members to provide adequate data security, consistent with industry standards, to ensure that Keenan's systems and networks adequately protected the Personal Information.

85.   Keenan knew, or should have known, the risks inherent in collecting and storing Personal Information in centralized location, Keenan's vulnerability to network attacks, and the importance of adequate data security.

86.   Keenan breached its duty to Plaintiff and in numerous ways, as described herein, including by:

   a.   Failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the Personal Information of Plaintiff and Class Members;

   b.   Failing to adequately monitor, evaluate and test the security and efficiency of their networks and systems;

   c.   Failing to comply with industry standard data security measures for the insurance and healthcare industry leading up to the Data Breach;

   d.   Failing to comply with its own privacy policies;

e.  Failing to comply with regulations protecting the Personal Information at issue during the period of the Data Breach;

f.  Failing to recognize in a timely manner that the Private Information of Plaintiff and Class Members had been compromised; and

g.  Failing to timely and adequately notify consumers that the Data Breach had occurred so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

87.  Plaintiff's and Class Members' Personal Information would not have been compromised but for Keenan's wrongful and negligent breach of its duties.

88.  Keenan's failure to take proper security measures to protect sensitive Personal Information of Plaintiff and Class Members as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access and copying of Personal Information by unauthorized third parties. Given that businesses that utilize Personal Information are prime targets for hackers, Plaintiff and Class Members are of a foreseeable, discernible group that was inherently at great risk for having their Private Information misused or disclosed if not adequately protected.

89.  It was also foreseeable that Keenan's failure to provide a timely notice of the Data Breach to Plaintiff and Class Members would result in further injury to Plaintiff and the Class Members.

90.  But for Keenan's negligent conduct and breach of its duties owed to Plaintiff and Class Members, their Personal Information would not have been compromised.

91.  As a direct and proximate result of Keenan's conduct, Plaintiff and Class Members have and will suffer damages including (i) the loss of rental or use value of their Personal Information; (ii) the unconsented disclosure of their

CLASS ACTION COMPLAINT

Personal Information to unauthorized third parties; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) time, effort, and expenses associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Personal Information, which remains in Keenan's possession and is subject to further unauthorized disclosures so long as Keenan fails to undertake appropriate and adequate measures to protect it; (viii) future cots in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Personal Information for the rest of their lives; and (ix) any nominal damages that may be awarded.

**COUNT II**
**Negligence *Per Se***
***(On Behalf of Plaintiff and the Class)***

92.    Plaintiff restates and realleges every allegation set for in the preceding paragraphs.

93.    Keenan's duty is triggered by Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair … practices in or affecting commerce," and for which the FTC has interpreted to include the unfair act or practice of a business by failing to employ reasonable measures to protect and secure Personal Information.

94.    Keenan violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and Class Members' Personal Information and by

CLASS ACTION COMPLAINT

failing to comply with applicable industry standards. Keenan's conduct was particularly unreasonable given the sensitive nature of the Personal Information they obtained and stored.

95.     Keenan 's violation of Section 5 of the FTCA constitutes negligence *per se*.

96.     Plaintiff and Class Members are within the class of persons that the FTCA was intended to protect.

97.     The harm that occurred as a result of the Data Breach is the type of harm that the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as suffered by Plaintiff and the Class Members.

98.     As a direct and proximate result of Keenan's negligence *per se*, Plaintiff and Class Members have suffered, continue to suffer, and will suffer from injuries, damages, and harm as set forth herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

<u>COUNT III</u>
**Breach of Third-Party Beneficiary Contract**
*(On Behalf of Plaintiff and the Class)*

99.     Plaintiff restates and realleges every allegation set forth in the preceding paragraphs.

100.   Upon information and belief, acting in the ordinary course of business, Keenan entered into contracts with its clients (schools, public agencies and health care organizations) to provide insurance and budgetary solutions based on the Personal Information it received from its clients and Plaintiff and Class Members.

101.   Upon information and belief, each of those respective contracts contained provisions requiring Keenan to protect the Personal Information that

CLASS ACTION COMPLAINT

Keenan received in order to provide such insurance and budgetary solutions.

102. Upon information and belief, these provisions that require Keenan, while acting in the ordinary course of business, to protect the Personal Information of Plaintiff and Class Members were intentionally included for the direct benefit of Plaintiff and Class Members, such that Plaintiff and Class Members are intended third-party beneficiaries of these contracts, and therefore entitled to enforce them.

103. Keenan breached these contracts while acting in the ordinary course of business by not protecting Plaintiff's and Class Members' Personal Information, as stated therein.

104. As a direct and proximate result of Keenan's breach, Plaintiff and Class Members sustained actual losses and damages described in detail herein.

**COUNT IV**
**Violation of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
***(On behalf of Plaintiff and the Class)***

105. Plaintiff restates and realleges every allegation set forth in the preceding paragraphs.

106. Keenan is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

107. Keenan violated Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

108. Keenan's "unfair" acts and practices include:

    a. Keenan failed to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' Personal Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

    b. Keenan failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following

previous cybersecurity incidents;

c. Keenan's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures.

These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45;

d. Keenan's failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as alleged above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of Keenan's grossly inadequate security, consumers could not have reasonably avoided the harms that Keenan caused; and

e. Keenan engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

109. Keenan has engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45, and California common law.

110. Keenan's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and as Class Members' Personal Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Personal Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not properly secure Plaintiff's and Class Members' Personal Information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information.

111. Plaintiff and Class Members reserve the right to allege other violations of law by Keenan constituting other unlawful business acts or practices. Keenan's above-described wrongful actions, inaction, omissions and want of ordinary care are ongoing and continue to this date.

112. Keenan's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Keenan's data

security and ability to protect the confidentiality of consumers' Personal Information.

113.  As a direct and proximate result of Keenan's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and suffered monetary and non-monetary damages, as alleged herein, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Personal Information; overpayment for Keenan's services; loss of the value of access to their Personal Information; and the value of extended credit monitoring and identity protection services made necessary by the Data Breach.

114.  Keenan acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

115.  Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Keenan's unfair, unlawful, and fraudulent business practices or use of their Personal Information; declaratory relief; reasonable attorneys' fees and costs under Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT V**
**Unjust Enrichment**
***(On Behalf of Plaintiff and the Class)***

116.  Plaintiff restates and realleges every allegation as set forth in the proceeding paragraphs.

117.  Plaintiff and Class Members have an interest, both equitable and legal, in the Personal Information about them that was conferred upon, collected by, used by, and maintained by Keenan and that was ultimately stolen in the Data Breach.

CLASS ACTION COMPLAINT

118. Keenan benefited by the conferral upon it of the Personal Information pertaining to Plaintiff and the Class Members and by its ability to retain, use, and profit from that information. Keenan understood and valued this benefit.

119. Keenan also understood and appreciated that the Personal Information pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Keenan maintaining the privacy and confidentiality of that Personal Information.

120. Without Keenan's willingness and commitment to maintain the privacy and confidentiality of the Personal Information, Plaintiff and Class Members would not have provided and/or entrusted the information to Keenan.

121. Because of Keenan's use of Plaintiff's and Class Members' Personal Information, Keenan brokered more services than it otherwise would have. Keenan was unjustly enriched by profiting from the additional services and programs they were able to broker and in the detriment of Plaintiff and Class Members.

122. Keenan also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Personal Information.

123. It is inequitable for Keenan to retain these benefits.

124. As a result of Keenan 's wrongful conduct as alleged in this Complaint (including among other things, its failure to implement reasonable safeguards to ensure the protection of the Personal Information belonging to Plaintiff and Class Members), Keenan has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

125. Keenan's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein, including the collection and use of Plaintiff's and Class Members' sensitive Personal Information, while at the same time failing to implement, monitor, audit, and test its own data security to maintain

the security of the information from intrusion and theft by cybercriminals and identity thieves.

126. It is inequitable, unfair, and unjust for Keenan to retain these wrongfully obtained benefits. Keenan's retention of wrongfully obtained monies violates fundamental principles of justice, equity, and good conscience.

127. The benefit conferred upon, received, and enjoyed by Keenan was not conferred gratuitously, and it would be inequitable, unfair, and unjust for Keenan to retain the benefit.

128. Plaintiff and Class Members have no adequate remedy at law.

129. Keenan is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Keenan as a result of its wrongful conduct, including specifically, the value to Keenan of the Personal Information that was stolen in the Data Breach; the profits Keenan received and is receiving from the use of that information; and the amounts that Keenan should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

<u>**COUNT VI**</u>
**Declaratory Judgment**
***(On Behalf of Plaintiff and the Class)***

130. Plaintiff restates and realleges every allegation as set forth in the proceeding paragraphs.

131. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

132. An actual controversy has arisen in the wake of the Data Breach regarding Keenan's present and prospective common law and other duties to reasonably safeguard Personal Information and whether Keenan is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further cyberattacks and data breaches that compromise their Personal Information.

133. Keenan still possesses Personal Information pertaining to Plaintiff and Class Members, which means their Personal Information remains at risk of further breaches because Keenan's data security measures remain inadequate. Plaintiff and Class Members continue to suffer injuries as a result of the compromise of their Personal Information and remain at an imminent risk that further compromises of their Personal Information will occur in the future.

134. Pursuant to the Declaratory Judgment Act, Plaintiff seeks a declaration that: (a) Keenan's existing data security measures do not comply with their obligations and duties of cares; and (b) in order to comply with their obligation and duties of care, (1) Keenan must have policies and procedures in place to ensure effective monitoring and testing of their security practices and protocols; (2) Keenan must: (i) purge, delete, or destroy in a reasonably secure manner Plaintiff's and Class Members' Personal Information if it is no longer necessary to perform essential business functions so that it is not subject to further theft; and (ii) implement and maintain reasonable, industry-standard security measures, including, but not limited to:

      a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Keenan 's systems on a periodic basis, and ordering Keenan to promptly correct any

problems or issues detected by such third-party security auditors;

b.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

d.  Encrypting Personal Information and segmenting Personal Information by, among other things, creating firewalls and access controls so that if one area of Keenan 's systems is compromised, hackers cannot gain access to other portions of its systems;

e.  Purging, deleting, and destroying in a reasonable and secure manner Personal Information not necessary to perform essential business functions;

f.  Conducting regular database scanning and security checks;

g.  Conducting regular employee education regarding best security practices;

h.  Implementing multi-factor authentication and POLP to combat system-wide cyberattacks; and

i.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the Class sets forth herein, respectfully requests the following relief:

A.  That the Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

B.      That the Court grant permanent injunctive relieve to prohibit and prevent Keenan from continuing to engage in unlawful acts, omissions, and practices described herein;

C.      That the Court award Plaintiff and Class Members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

D.      That the Court award statutory damages, trebled, and/or punitive or exemplary damages, to the extent permitted by law;

E.      That the Court award Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses: and

F.      That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the instant action.

Dated: February 27, 2024

*/s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
*aberry@justice4you.com*
Gregory Haroutunian (SBN 330263)
*gharoutunian@justice4you.com*
Brandon P. Jack (SBN 325584)
*bjack@justice4you.com*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Tel: (747) 777-7748

Norman E. Siegel*
Brandi S. Spates*
Kate C. Marshall (SBN 350231)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100

CLASS ACTION COMPLAINT

*siegel@stuevesiegel.com*
*marshall@stuevesiegel.com*
*spates@stuevesiegel.com*

\**pro hac vice* forthcoming

*Counsel for Plaintiff and the Class*

CLASS ACTION COMPLAINT